AUSTIN POLICE ASSOCIATION, Combined Law Enforcement Associations of Texas and Catherine M. Haggerty, Appellants,

v.

CITY OF AUSTIN and Brian Rodgers and Linda Curtis, Appellees.

No. 03–02–00092–CV.

Court of Appeals of Texas, Austin.

March 15, 2002.

John J. McKetta III, Jennifer Piskun, Graves, Dougherty, Hearon & Moody, P.C., Austin, for appellants.

David Allan Smith, Assistant City Attorney, Austin, for City of Austin.

Brad Rockwell, Scanlan, Buckle & Young, P.C., Austin, for Rodgers and Curtis.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

MARILYN ABOUSSIE, Chief Justice.

This appeal concerns the efforts of three incumbent, two-term city council members to secure a place on the ballot for the next Austin city council election. The Austin city charter limits council members to two consecutive terms. A two-term, incumbent council member may nevertheless "become a candidate for an additional term or terms and serve if elected" if that council member collects the requisite number of signatures on a petition to be filed at the same time as the council member's application for candidacy. Austin, Tex., Code, City Charter, art. II, § 3 (2001). This dispute centers on whether the city charter conflicts with the state election code governing the number of signatures required to be filed. Appellants [1] maintain that the number of signatures required by the city charter conflicts with section 143.005 of the state election code. Accordingly, they sought a declaratory judgment from the district court declaring that because a conflict exists, the state election code should govern the number of signatures required. The district court disagreed and rendered judgment declaring that the two provisions could be harmonized. We will affirm the district court's judgment.

## BACKGROUND

In 1994, City of Austin voters approved an amendment to the city charter establishing term limits for city council members. The city charter now prohibits any person from serving in the same position on the city council for more than two consecutive terms. Austin, Tex., Code, City Charter, art. II, § 3. But the city charter also includes one exception to the term limitation:

> [A]ny Councilmember may become a candidate for an additional term or terms and serve if elected, if at the time of filing the application to be a candidate for ... a place on the Council, the application is accompanied by a petition requesting that the incumbent be authorized to be a candidate, signed by a minimum of five (5) per cent of the qualified voters of the city....

In other words, a two-term incumbent may overcome the term limit restriction by submitting a petition signed by five percent of

---

1. Appellants consist of Austin Police Association, Combined Law Enforcement Associations of Texas, and Catherine M. Haggerty; we refer to them collectively as "appellants" for the sake of convenience.

the qualified voters, or roughly 20,915 signatures.[2]

In contrast, the state election code is silent on the issue of term limits. It does, however, address petitions that are "required or authorized to be filed in connection with a candidate's application for a place on the ballot for an office of a home-rule city." Tex. Elec.Code Ann. § 143.005(d) (West Supp.2002).[3] According to the election code, the *minimum* number of signatures that must appear on such a petition is the greater of twenty-five (25) or one-half of one percent of the total votes cast in the last mayoral election, or in this case 178.[4] *Id.*

Appellants consist of a group of registered voters who support and wish to vote for at least one of the three two-term incumbents at the next city council election. They sought a declaration that the city charter and the election code conflict, in which event, they contend, the charter provision is invalid and the state election code should govern the total number of signatures required on a petition to avoid the term limits. The City of Austin counterclaimed,[5] requesting the court to declare that the city charter and the election

code are not in conflict and can be harmonized. The district court rendered judgment against appellants and in favor of the City. Appellants bring this appeal.

## DISCUSSION

■ Austin is a home-rule city. Austin, Tex., Code, City Charter, ed. note to preamble (2001); *Quick v. City of Austin,* 7 S.W.3d 109, 122 (Tex.1999); *see also* Tex. Const. art. XI, § 5 interp. commentary (West 1993) (authorizing home rule in cities with populations of more than 5000). Home-rule cities are cloaked with broad discretionary powers under the Texas Constitution and statutes. Tex. Const. art. XI, § 5; Tex. Loc. Gov't Code Ann. § 51.072 (West 1999); *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 490–91 (Tex.1993). They possess "the full power of self government and look to the legislature not for grants of power, but only for limitations on their power." *Dallas Merchant's,* 852 S.W.2d at 490–91. These cities may adopt or amend their own charters·by a majority vote of their qualified voters. Tex. Const. art. XI, § 5.

2. The parties agreed to stipulated facts, which were submitted to the trial court. Among those stipulations was the fact that "[u]sing 418,298 as a working number, the number of signatures that the charter requires for each two-term incumbent is 20,915. The actual minimum number of signatures that must appear on the petition under the charter amendment may be somewhat greater or lesser, depending on the number of registered voters on the day the petition is filed."

3. Section 143.005(d) provides in full:
   For any petition required or authorized to be filed in connection with a candidate's application for a place on the ballot for an office of a home-rule city, the minimum number of signatures that must appear on the petition is the greater of:
   (1) 25; or

   (2) one-half of one percent of the total vote received in the territory from which the office is elected by all candidates for mayor in the most recent mayoral general election.
   Tex. Elec.Code Ann. § 143.005(d) (West Supp.2002).

4. The parties also stipulated that in the most recent Austin mayoral general election, 35,-438 votes were cast, and one-half of one percent of that number is 178.

5. Appellees Brian Rodgers and Linda Curtis are registered voters who intervened in the suit. Their interests appear to coincide with the City of Austin's position. Thus, we will address the intervenors and the City of Austin collectively as "the City," unless our discussion requires us to distinguish among them.

▆▆ A city's ordinance or charter provision is presumed to be valid. *City of Brookside Village v. Comeau,* 633 S.W.2d 790, 792 (Tex.1982); *City of Houston v. Todd,* 41 S.W.3d 289, 295 (Tex.App.—Houston [1st Dist.] 2001, pet. denied). But no city ordinance or charter provision "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." Tex. Const. art. XI, § 5. An ordinance or charter provision that attempts to regulate a subject matter preempted by state statute is unenforceable to the extent it conflicts with that statute. *Dallas Merchant's,* 852 S.W.2d at 491. The mere fact that the legislature addresses a subject matter area, however, does not prevent a home-rule city from regulating the same subject area through a city ordinance or city charter provision. Courts will not hold a state statute and a city ordinance or charter provision repugnant to each other if the court can reasonably harmonize the two. *Id.* Determining whether a city charter provision conflicts with the state election code presents us with a pure question of law, which we review de novo. *Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex. 1995).

▆▆ Appellants argue on appeal that section 143.005(d) of the election code should be broadly applied, and because it refers to *any* petition filed in connection with a candidate's application for a place on the ballot, it applies to *every* such petition. They ask us to declare the charter's term limit exception invalid because it conflicts with state law.[6] Appellees counter that "[t]he state law applies to ballot access petitions, the procedure whereby an otherwise qualified candidate has his or her name placed on a ballot"; the Austin city charter provision, on the other hand, governs the eligibility of an incumbent to become a candidate. We agree with the City's contention.

A comparison of the terminology employed by the state election code and the term limits provision in the city charter evidences this distinction between ballot access and eligibility for candidacy.[7] Chapter 143 of the state election code applies only to *candidates* for a city office. Tex. Elec.Code Ann. § 143.001 (West 1986). Indeed, the chapter is entitled, "Candidate for City Office," and section 143.005(d) of that chapter addresses "any petition required or authorized to be filed in connection with a *candidate's* application for a place on the ballot for an office of a home-rule city." *Id.* § 143.005(d) (West Supp. 2002) (emphasis added); *cf. id.* § 141.001 (West 1986) (listing requirements "[t]o be eligible to be a candidate for ... public elective office...."). [8]

---

**6.** If we were to hold the city charter's term limit exception invalid, that would arguably result in an absolute term limitation, rather than a court-ordered amendment to the number of signatures required to avoid the term limit restriction. Because we hold that the charter provision does not conflict with the state election code, we need not reach this question.

**7.** We note that the City is authorized to implement both additional candidate eligibility requirements, *see* Tex. Loc. Gov't Code Ann. § 26.041(3) (West 1999), and ballot access requirements. *See* Tex. Elec.Code Ann. § 143.005(a) (West Supp.2002).

**8.** In support of their argument that the state election code should preempt the city charter provision, appellants direct us to the phrase, *"any petition* required or authorized to be filed in connection with a candidate's application for a place on the ballot for an office." Tex. Elec.Code Ann. § 143.005(d) (emphasis added). They argue that the City has construed this phrase to mean "any petition in lieu of a filing fee" and has consequently attempted to limit the applicability of the stat-

In contrast, the city charter provision at issue here renders a two-term incumbent council member *ineligible* to be a candidate or to serve in the same position for a third consecutive term. Austin, Tex., Code, City Charter, art. II, § 3. This ineligibility or disqualification can be removed only at the request of the requisite number of city voters, evidenced by a petition filed in accordance with the city charter provision. The provision stipulates that a council member *may become a candidate* if along with an application, the council member files a petition "requesting that the incumbent be authorized to be a candidate." *Id.* In other words, prior to the filing of this petition, the council member is ineligible to be a candidate, even if the member files an application. *See* Tex. Elec.Code Ann. § 141.001(a); *Wentworth v. Meyer*, 837 S.W.2d 148, 151 (Tex.App.— San Antonio, orig. proceeding) (holding that one ineligible to hold office cannot be candidate for that office), *overruled on other grounds*, 839 S.W.2d 766 (Tex.1992). And chapter 143 of the state election code does not yet apply to the ineligible council member, as that chapter applies only to qualified candidates for city office. *See*

Tex. Elec.Code Ann. § 143.001. Once the council member removes the impediment to candidacy, the council member may then seek a place on the ballot by complying with the ballot access requirements.

Further evidencing this distinction between ballot access and eligibility for candidacy is the provision in the city charter that allows a candidate to file a petition to reduce the filing fee that must accompany a candidate's application. Austin, Tex., Code, City Charter, art. III, § 4 (2001). That provision begins with the phrase, *"Any qualified person* who desires to become a candidate." *Id.* (emphasis added). The petition authorized by the charter provision must include signatures of registered voters "requesting that the name of the candidate be placed on the ballot." *Id.* This type of petition, which is filed by an otherwise qualified candidate seeking a place on the ballot, is the type of petition contemplated by chapter 143 of the state election code. It serves a distinct and separate purpose, *i.e.*, access to the ballot, as contrasted with a petition required to remove an ineligibility due to the term limit restriction.[9]

ute to only those petitions despite the statute's broad language. Appellants' focus is misplaced. The applicability of the state statute does not depend upon the breadth of the phrase "any petition"; rather, the focus of our inquiry is whether a two-term incumbent can be a *candidate* and thus subject to chapter 143 of the state election code.

9. An earlier version of section 143.005 expressly tied the ballot access petition to the filing fee requirement; that is, in lieu of a filing fee, a candidate could obtain a place on the ballot if the candidate submitted a petition with a certain number of signatures. Act of May 13, 1985, 69th Leg., R.S., ch. 211, sec. 1, § 143.005(c), 1985 Tex. Gen. Laws 802, 960 (Tex. Elec.Code Ann. § 143.005, since amended). The statute also established the maximum number of signatures a city could require. *Id.* The 1987 amendment moved the

petition provision to a new subsection that did not refer to a filing fee. Act of April 23, 1987, 70th Leg., R.S., ch. 54, sec. 11, § 143.005(d), 1987 Tex. Gen. Laws 131, 134–35. Appellants contend this was a substantive amendment intending to broaden its application to any petition filed in connection with an election. The same amendment also changed the phrase *"maximum* number of signatures that must appear on a petition in lieu of filing fee" to "the *minimum* number of signatures that must appear on the petition." *Id.* (emphasis added). Following appellants' reasoning would require us to recognize that the statute now provides only a minimum requirement and not a maximum requirement, thus eliminating any conflict between the city charter and the statute. Because we rely on other grounds in holding that no conflict exists between the city charter and the state statute, we do not address the effect of the amendments to the election code.

In sum, we hold that the petition that must be filed by a two-term incumbent *council member who seeks a third* consecutive term in office is properly characterized as an eligibility requirement. Until this petition is filed, the incumbent is not *eligible* to become a candidate for the office sought. Because the state election code only addresses petitions filed in connection with a *candidate's* application for office, it does not conflict with the city charter provision, and the two can be reasonably harmonized without diminishing their effect. Accordingly, we overrule appellants' issue and affirm the district court's judgment.