**EDDINS ENTERPRISES, INC. d/b/a Friendly Aviation and RSP Management Services, Inc., Appellant/Cross–Appellee**

v.

**The TOWN OF ADDISON, Texas, Appellee/Cross–Appellant.**

**No. 05–08–00194–CV.**

Court of Appeals of Texas, Dallas.

March 6, 2009.

---

Robert L. Kelsoe, Kelsoe, Anderson, Khoury & Clark, P.C., Dallas, for Appellant.

R. Michael Northrup, Sim Israeloff, Cowles & Thompson, P.C., Dallas, for Appellee.

Before Justices MORRIS, FRANCIS, and MURPHY.

## OPINION

Opinion by Justice FRANCIS.

Eddins Enterprises, Inc. d/b/a Friendly Aviation and RSP Management Services, Inc. appeals the trial court's judgment upholding the validity of an "access fee" ordinance and ordering Eddins to pay $71,477.63 in unpaid access fees to the Town of Addison. In a cross-issue, the Town complains the trial court erred in concluding Eddins did not owe for access fees associated with a separate piece of property Eddins leases from the Town. For the reasons that follow, we affirm in part, reverse and render in part, and re- verse and remand this case to the trial court.

Eddins owns two pieces of property in Addison, Texas; both are used for aviation purposes in connection with the Addison Airport. The two properties are known as the "Big Hangar" and the "T–Hangar." Since 1980, the Town has leased Eddins property adjacent to the Big Hangar, re- ferred to as the "Ground Lease." Eddins accesses the airport directly from the T– Hangar and the Ground Lease, a practice referred to as "through-the-fence" access. In 2001, the Town enacted Addison Ordi- nance 001–043 requiring all off-airport property owners such as Eddins to have a permit in order to continue accessing the airport through-the-fence from off-airport property. To obtain a permit, off-airport property owners were required to fill out an application and pay an access fee.

Eddins claimed it did not need a permit because a license agreement entered into at the time of the T–Hangar purchase specifically provided Eddins could access the airport without charge. Eddins also claimed its lease with the Town provided Eddins could access the airport without charge from the Ground Lease. After the Town threatened to cut off Eddins's through-the-fence access, Eddins paid the access fees under protest and filed a peti- tion seeking to have the ordinance de- clared unenforceable because it violated section 22.021 of the Texas Transportation Code. Eddins also sought temporary and permanent injunctive relief to prevent the Town from denying Eddins through-the- fence access. The Town answered and filed a counterclaim for unpaid access fees.

While this case was pending, the 160th Judicial District Court signed a judgment holding the ordinance invalid and void in a separate lawsuit between the Town and an unrelated third party. Reasoning that the Town was estopped from claiming the or-

dinance was valid, the trial court in this case likewise held the ordinance invalid, enjoined the Town from denying Eddins access for failure to pay fees, and ordered the Town take nothing on its counterclaim. The parties in the 160th District Court lawsuit subsequently settled, and the 160th District Court's judgment was vacated according to their settlement agreement. The Town's motion for partial new trial addressing only the validity of the ordinance in the Eddins's case was granted, and following a nonjury trial, the trial court found the ordinance valid and ordered Eddins to pay access fees for the T–Hangar property but not for the Big Hangar property. Findings of fact and conclusions of law were not requested or made. This appeal and cross-appeal ensued.

■ In its second issue, Eddins contends the trial court erred in failing to declare section 14–106 of the Addison Ordinance 001–043 invalid. Under this issue, Eddins claims the ordinance is void because it violates provisions of section 22.021(b) of the Texas Transportation Code. We disagree.

Section 22.021, entitled "Use of Airport by Another," provides:

(a) In operating an airport or air navigation facility that it owns, leases, or controls, a local government may enter into a contract, lease, or other arrangement for a term not exceeding 40 years with a person:

(1) granting the privilege of using or improving the airport or air navigation facility, a portion or facility of the airport or air navigation facility, or space in the airport or air navigation facility for commercial purposes;

(2) conferring the privilege of supplying goods, services, or facilities at the airport or air navigation facility; or

(3) making available services to be furnished by the local government or

its agents at the airport or air navigation facility.

(b) In entering into the contract, lease, or other arrangement, the local government may establish the terms and fix the charges, rentals, or fees for the privileges or services. The charges, rentals, and fees must be reasonable and uniform for the same class of privilege or service and shall be established with due regard to the property and improvements used and the expenses of operation to the local government.

TEX. TRANSP. CODE ANN. § 22.021 (Vernon 1999).

■ A city's ordinance is presumed to be valid. *Austin Police Ass'n v. City of Austin,* 71 S.W.3d 885, 888 (Tex.App.-Austin 2002, no pet.) (citing *City of Brookside Village v. Comeau,* 633 S.W.2d 790, 792 (Tex.1982)). However, no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5; *Austin Police Ass'n,* 71 S.W.3d at 888. The party challenging the ordinance bears an "extraordinary burden" to establish the ordinance is invalid or "that no conclusive or even controversial or issuable fact or condition existed" that would authorize passage of the ordinance. *See Comeau,* 633 S.W.2d at 792–93. We review de novo the trial court's ruling on the validity of an ordinance and we consider all the circumstances and determine as a matter of law whether the legislation is invalidated by a relevant statute or constitutional provision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998); *Austin Police Ass'n,* 71 S.W.3d at 888.

In its petition below and on appeal, Eddins claims the provision of the Addison Ordinance "regarding the basis for and methodology of calculating the fee to be

assessed against through-the-fence users" violates section 22.021(b) of the Texas Transportation Code because it is not reasonable and uniform and is not based on "the property and improvements used and the expenses" of the operation of such property and improvements. As the party challenging the ordinance, Eddins had the "extraordinary burden" at trial to show the ordinance was invalid. *See Comeau*, 633 S.W.2d at 792; *see also Black v. City of Killeen*, 78 S.W.3d 686, 692 (Tex.App.-Austin 2002, pet. denied) (when challenging city ordinance, standard of review does not require City to show fees are reasonable, rather it places affirmative requirement on Black to show they are not).

Four people testified at trial. Chris Terry, assistant city manager for the Town, is responsible for various Town departments, including the airport. Although he did not participate in the decision process in calculating the access fee, he was familiar with the ordinance enactment and the background behind it. According to Terry, the 2001 access fee for through-the-fence access was based on several factors: the fair market value of a given property as determined by the Dallas Central Appraisal District, the number of square feet of land in the property, a return-from-leasing multiplier (to take into consideration the anticipated return from leasing the property), a financing factor, and a tax factor. Terry knew the transportation code provisions were part of the evaluation process in drafting the ordinance and testified the staff considered the transportation code in putting together the recommendation. The cost of operating the airport was also considered and the Town gave "due regard to both the property and improvements used, and the expenses of operation to the Town when it developed the ordinance." The remaining three witnesses had no knowledge of how the ordinance was determined or enacted.

The evidence at trial showed the Town established the access fee "with due regard to the property and improvements used and the expenses of operation to the local government." *See* TEX. TRANSP. CODE ANN. § 22.021(b). No evidence in the record shows the access fee was "not reasonable and uniform." Because Eddins did not meet its burden of establishing the access fee ordinance was not reasonable and uniform and because there is some evidence the fee was based on the property and improvements used and the expenses of the operation of said property and improvements, we cannot conclude the trial court erred in holding the ordinance was valid. We overrule Eddins's second issue.

■ In its first issue, Eddins claims it has a licensing agreement acquired at the time Eddins purchased the T–Hangar. According to Eddins, the licensing agreement has the same legal effect as an easement and granted the company the right to access the airport without paying the access fee. Eddins argues the trial court erred in concluding otherwise. We disagree.

■ Trial courts interpret easements by applying basic principles of contract construction and interpretation. *Marcus Cable Assoc., L.P. v. Krohn*, 90 S.W.3d 697, 700–01 (Tex.2002). They construe contracts as a matter of law, and we review their rulings de novo. *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex.App.-Dallas 2004, no pet.); *see J.M Davidson, Inc. v. Webster*, 128 S.W.3d 223, 226, 229 (Tex. 2003) (citing *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983)). In this case, neither party argues the terms of the licensing agreement are ambiguous; they simply disagree over the licensing agreement's construction and interpretation. Thus, we must determine the parties' intent by ex-

amining and considering the entire writing in an effort to give effect to the parties' intentions as expressed in the contract. *Nicol,* 127 S.W.3d at 394.

Roy Eddins, the "head guy" at Eddins, testified the company bought the T–Hangar from Charles McKamy, who had acquired the property from John Brown. When Brown originally purchased the property, he entered into a license agreement with Addison Airport, Inc., the owner and operator of the airport at the time. Under the terms of the license, Brown acquired "the right, privilege and license to use the public facilities including . . . all runways [and] taxiways" and agreed to "abide by all of the usual and reasonable general rules and regulations" covering operation of the airport "including such regulations as have been or may be promulgated" by the owner/operator of the airport, the Town, the Federal Aviation Administration, or other competent governmental authority having jurisdiction. McKamy acquired these same rights and, upon the sale of the T–Hangar property, assigned a portion of these rights to Eddins. Under the limited assignment of rights, Eddins "covenant[ed] and agree[d] to be bound by all of the terms, conditions, covenants, restrictions and agreements of" Brown. Thus, Eddins agreed to abide by all of the usual and reasonable general rules and regulations covering operation of the airport, including those "as have been or may be promulgated" by the Town.

An ordinance is a local law or regulation. WEBSTER'S 3RD NEW INT'L DICTIONARY 1588 (1981); *see also City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (ordinance analyzed as "a form of time, place, and manner regulation"); *City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 805 (Tex.1984) (City of College Station ordinance discussed as regulation); *Comeau,*

633 S.W.2d at 793 (ordinances at issue had effect of zoning regulation). Because the Town's ordinance is a regulation, Eddins agreed to abide by the ordinance under the terms of the limited assignment of rights. Furthermore, we have already concluded the ordinance is valid. Under these facts and circumstances, we cannot conclude the trial court erred in ordering Eddins to pay the $61,926.95 in unpaid access fees for accessing the airport from the T–Hangar property. We overrule Eddins's first issue.

■ In a cross-point, the Town claims the trial court erred in declaring Eddins has a right to access the airport without charge from the Big Hangar by way of the 1980 Ground Lease. The Town specifically argues (i) Eddins does not have a right to access the Ground Lease via the Big Hangar and, therefore, cannot access the airport from the Big Hangar, and (2) even assuming it does have such access, Eddins is not entitled to do so without paying the access fee.

The Town first contends Eddins cannot access the Ground Lease property from the Big Hangar. Without citing any authority, the Town claims that, because the lease does not specifically address the rights of the tenant to access the leased property from private off-airport property, we must conclude the lease does not allow such access. While we agree the lease does not specifically address how the tenant may access the property, we note that the lease does not *prohibit* Eddins from accessing the Ground Lease property from the Big Hangar. Rather, the lease is silent on this issue. Because the lease does not specifically address how Eddins may access the property, we are not inclined to read a limitation into the lease. *See Maxwell v. Lake,* 674 S.W.2d 795, 802 (Tex. App.-Dallas 1984, no writ) (if written contract is silent, question is "not one of inter-

preting the language of the writing but rather one of determining the legal effect of the writing."); *Thompson v. CPN Partners, L.P.*, 23 S.W.3d 64, 71 (Tex.App.-Austin 2000, no pet.) (when contract is silent on particular issue, court must determine effect of silence). We cannot conclude the trial court erred in holding Eddins was allowed to access the Ground Lease property from the Big Hangar.

■ The Town next contends the ordinance applies to the Ground Lease. We agree. The ground lease provides:

> 28. **Title.** Tenant accepts the demised premises subject to: (i) the Base Lease; (ii) the Rules and Regulations; (iii) easements and rights-of-way; and (iv) zoning ordinances and other ordinances, laws, statutes or regulations now in effect or hereafter promulgated by any governmental authority having jurisdiction over the demised premises.

The plain language of the lease states Eddins agrees to be subject to ordinances in effect at the time the lease was signed as well as ordinances enacted thereafter. Because Eddins agreed to be bound by ordinances existing at the time the lease was signed as well as those enacted after, we conclude the access fee ordinance which was enacted after Eddins entered into the lease applies to the ground lease property. The trial court erred in concluding otherwise. We sustain the Town's cross-point.

We affirm the trial court's judgment to the extent it finds the access fee ordinance valid and orders Eddins to pay $81,028.31 in unpaid access fees for the T–Hangar property. We reverse the trial court's judgment to the extent it finds Eddins was entitled to access the airport without charge from the Ground Lease and render judgment that Eddins pay $5,021.66 in unpaid access fees for accessing the airport from the Ground Lease property. We remand this case to the trial court for the recalculation of attorney's fees.