**AFFIRMED as Modified; Opinion Filed December 7, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00108-CV

**UNITED SERVICES PROFESSIONAL GROUP, INC. D/B/A PYRAMID REALTY,
MAJID HAMMASI, SADAT BASSAMPOUR FATEMEH, AND AL DANESHIAN,
Appellants**

**V.**

**DAVID M. HURT, KIMBERLY R. HURT, NATIONAL AUDUBON SOCIETY, INC.,
AND DALLAS COUNTY AUDUBON SOCIETY, INC., Appellees**

**On Appeal from the 162nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-10-04892-I**

## MEMORANDUM OPINION

Before Justices Fillmore, Stoddart, and Richter[1]
Opinion by Justice Stoddart

This is an appeal from a partial summary judgment and a judgment rendered after a bench trial. The dispute between the parties arises out of an easement. The trial court's judgment provides appellees with declaratory relief and awards damages in their favor. On appeal, appellants argue four issues: (1) the trial court erred by providing appellees with declaratory relief as to a matter not sought in their pleadings; (2) the trial court's judgment is inconsistent with the plain language of the easement; (3) the trial court erred by rendering an

---

[1] The Hon. Martin Richter, Justice, Assigned

indefinite and uncertain judgment; and (4) the trial court's award of damages is not supported by sufficient evidence. We modify the trial court's judgment and affirm as modified.

FACTUAL BACKGROUND

In the 1960s, the Mobley family—which is not a party to this lawsuit—owned 287 acres of land in Cedar Hill, Texas. When the Mobleys divided their property, easements were granted to landlocked parcels. The parties to this lawsuit own neighboring pieces of property that used to be part of the Mobley estate. Appellants' properties are landlocked, and they have a road easement that crosses property owned by the Audubon appellees (the Easement). The Easement states: "SAID TRACT BEING SUBJECT to a 50 foot road easement for egress and ingress, being 25 feet on either side of centerline as shown on plat of subdivision of BF Mobley and Julie Viola Mobley Estate Partition."

Appellees' land is part of an area known as "Dogwood Canyon" and the "Cedar Hill Escarpment." For nearly 20 years, appellees worked to preserve their land and create a bird sanctuary. A substantial portion of the testimony at trial was about the unique qualities of appellees' land, the types of vegetation that grow on their properties, and appellees' future plans to use the land as a nature preserve.

In April 2010, appellant Al Daneshian,[2] president of appellant United Services Professional Group, Inc., hired a person to use a backhoe[3] and remove vegetation from an area he believed was on the Easement. He sought to clear a path so a truck could drive along the Easement from the main road to his property. Clearing the path was part of the preliminary work for appellants' plans to develop their properties into home sites for resale. However, the backhoe

_____

[2] Al Daneshian is married to appellant Sadat Bassampour Fatemeh and is business partners with appellant Majid Hammasi. Daneshian, Fatemeh, and Hammasi purchased land to develop into residential home sites. They had an oral agreement giving Daneshian authority to develop the property for residential use.

[3] There also is testimony the person used a bulldozer, a tractor, or a front-end loader to remove the vegetation. Which type of machinery was used is not important to the resolution of this appeal and we will use the term backhoe.

driver cleared vegetation from an area outside the Easement on property owned by appellee David Hurt.

The parties dispute the extent of the damage the backhoe caused to the Hurts' property. Witnesses for appellees testified the damage was substantial. Mr. Hurt said the area looked like a tornado cleared the vegetation. As a result of the clearing, trees were pushed over, trees were stripped of lower limbs and bark, and there were multiple, large piles of trees and brush left behind. Some trees that remained standing were damaged. As a result of the demolition of trees, the tree canopy was opened, which caused more damage to the natural habitat. An expert testified "this trespass is a major infraction" on appellees' preservation efforts and the Hurts' property would require ongoing work and could never be fully restored.

Appellees' witnesses further testified that prior to the trespass, a trail approximately 6-feet wide existed on the Hurts' property. After the trespass, the cleared area was approximately 17-feet wide. Appellees' expert testified "there were 11 feet added to the original trail at 635 feet deep. That's 6,985 square feet." He estimated about 690 individual trees were destroyed. Three years after the event, on August 20, 2013, the expert visited the site again to "review the site of the trespass." He provided Mr. Hurt with a "reclamation plan that would provide for an immediate canopy replacement and a replacement of native understory trees that were removed as a result of the damage to the property in 2010." His estimated cost to accomplish these goals was $88,493.00.

Daneshian portrayed the damage differently. He testified the backhoe did not significantly damage the Hurts' property: "They had scuffed some of the tree [sic] at the end of the trail, two or three trees. Basically, that's all I could see. Couple - - few trees were damaged, but the trees are still live [sic]. The trees are recovering. They're in good shape." He also noted the backhoe driver cleared some underbrush and moved broken limbs already on the ground.

Daneshian testified he has not seen any large openings in the canopy of trees on the property, his worker did not do anything to cause any large openings in the canopy, and there are openings in the canopy throughout the Audubon's property. Daneshian testified that in order to create the development planned by appellants, trees and natural vegetation must be removed from the Easement.

The Hurts sued appellants for trespass and Audubon sought a declaratory judgment:

> a. That the scope of any easement along [appellee's] Land owned by [appellants] is limited to providing [appellants] with a right to ingress and egress only;
> b. That the scope of any easement along [appellee's] Land owned by [appellants] does not provide [appellants] with any right to use the easement for development purposes, including, but not limited to, (1) running water, power, internet cable, or other utility lines along the easement, (2) building a road along the easement, and/or (3) transporting machinery or materials along the easement; and
> c. That [appellants] have no right to bulldoze, destroy, remove, conceal, encumber, or otherwise damage [appellee's] Land.

PROCEDURAL HISTORY

Appellees filed a partial traditional motion for summary judgment on their claim for declaratory judgment. The trial court granted the motion in part and denied it in part. The trial court's order states that the scope of the road Easement "is limited to providing [appellants] with a right to ingress and egress only" and the scope of the Easement does not provide appellants "with the right to use the road easement for any development that would result in any violation of applicable city, state, or federal ordinances, statutes, or laws."

Following a bench trial, the trial court rendered judgment that appellants trespassed on land owned by the Hurts and they were entitled to actual damages of $88,493 caused by the trespass. The trial court also rendered judgment in favor of Audubon, declaring the road Easement: (1) is "limited to providing the owner(s) of the Dominant Estates with a right to ingress and egress only;" (2) "Does not provide the owner(s) of the Dominant Estates with the

–4–

right to use the road easement for any purpose that would result in any violation of applicable city, state, or federal ordinances, statutes, or laws;" (3) "Does not provide the owner(s) of the Dominant Estates with any right to install power lines, water lines, cable lines, internet lines, or any other utility line along the easement;" and (4) "Does not provide the owner(s) of the Dominant Estates with any right to excavate the land or otherwise clear or remove trees along the easement."

LAW & ANALYSIS

## A.     Judgments Conform to Pleadings

In their first issue, appellants assert the trial court erred by rendering final judgment providing declaratory relief as to a matter not sought by appellees in their pleadings, and the trial court erred by granting partial summary judgment to appellees as to a matter not sought in their summary judgment motion. In response, appellees assert the trial court's order and judgment are supported by the pleadings or, alternatively, the declaratory relief granted was tried by consent.

Appellees' third amended petition sought declaratory relief as to three matters: (1) the scope of the road Easement is limited to ingress and egress; (2) appellants do not have the right to use the Easement for "development purposes"; and (3) appellants do not have the right to bulldoze, destroy, remove, conceal, encumber, or otherwise damage appellees' land. Appellees' partial motion for summary judgment sought declaratory relief as to the same matters. However, the trial court's order granting the partial summary judgment in part declares that the scope of the Easement does not provide appellants "with the right to use the road easement for any development that would result in any violation of applicable city, state, or federal ordinances, statutes, or laws." The final judgment includes similar language, although the issue was not litigated during the bench trial.

*1.* *Law*

A court's jurisdiction to render judgment is invoked by the pleadings, and a judgment unsupported by the pleadings is void. *Bever Props., LLC v. Jerry Huffman Custom Builders, L.L.C.*, No. 05-13-1519-CV, 2015 WL 4600347, at *14 (Tex. App.—Dallas July 31, 2015, no pet.) (mem. op.) (citing *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.); *Holden v. Holden*, 456 S.W.3d 642, 650 (Tex. App.—Tyler 2015, no pet.)). Therefore, a trial court's judgment must conform to the pleadings. *Id.* (citing TEX. R. CIV. P. 301; *Holden*, 456 S.W.3d at 650). Absent trial by consent, a plaintiff may not be granted a favorable judgment on an unpleaded cause of action and judgment on an unpleaded cause of action is void. *Id.*

Issues not raised in the pleadings can be tried by express or implied consent of the parties. TEX. R. CIV. P. 67; *Hampden Corp. v. Remark, Inc.*, 331 S.W.3d 489, 495 (Tex. App.—Dallas 2010, pet. denied). However, this rule "applies only where it appears from the record that the issue was actually tried, although not pleaded." *Hampden Corp.*, 331 S.W.3d at 495 (quoting *Case Corp. v. Hi–Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied)). To determine whether the issue was tried by consent, the court must examine the record not for evidence of the issue, but rather for evidence that the issue was tried. *Id*. The unpleaded issue may be deemed tried by consent when the evidence on the issue is developed without objection under circumstances indicating both parties understood the issue was being contested. *Id.* at 496 (citing *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) ("When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived."); *Case Corp.*, 184 S.W.3d at 771). An issue is not tried merely because there is evidence on the issue, but can be deemed tried by consent when both parties present conflicting evidence on the subject. *Id.* (citing *Ingram*, 288 S.W.3d at 893). On the other hand, an issue is not tried by consent when the

–6–

evidence relevant to the unpleaded issue is also relevant to a pleaded issue because admitting that evidence would not be calculated to elicit an objection and its admission ordinarily would not prove the parties' "clear intent" to try the unpleaded issue. *Id.* (citing *Case Corp.*, 184 S.W.3d at 771).

The trial court has broad discretion to determine whether an unpleaded issue was tried by consent. *Id.* at 495 (citing *Case Corp.*, 184 S.W.3d at 771). Although that discretion is to be exercised liberally in favor of justice, trial by consent is the exception, not the rule, and should not be inferred in doubtful cases. *Id.* (citing *Case Corp.*, 184 S.W.3d at 772).

2. *Analysis*

There are no allegations in appellees' live pleading, their partial summary judgment motion, or anywhere else in the record that appellants must be restrained from violating state or federal ordinances, statutes, or laws. No evidence was admitted with respect to any state or federal laws that might be applicable to the parties' properties. Therefore, we conclude the trial court lacked jurisdiction to render judgment that the Easement does not provide appellants "with the right to use the road easement for any development that would result in any violation of . . . state, or federal ordinances, statutes, or laws." *See Bever Props.*, 2015 WL 4600347, at *14; *In re S.A.A.*, 279 S.W.3d at 856. This portion of the judgment is void. *See Bever Props.*, 2015 WL 4600347, at *14; *In re S.A.A.*, 279 S.W.3d at 856.

Likewise, neither appellees' live pleading nor their motion for partial summary judgment requests a declaration that the Easement does not provide appellants "with the right to use the road easement for any development that would result in any violation of applicable city . . . ordinances, statutes, or laws." However, in their third amended petition and motion for partial summary judgment, appellees alleged the City of Cedar Hill has ordinances and escarpment zone regulations strictly limiting development and clearing rights and appellees' properties are

–7–

protected by those regulations. Appellees further claimed that appellants entered their land and cleared it in violation of a Cedar Hill Tree Preservation Ordinance and the Escarpment Development Regulations, which are intended to preserve Cedar Hill's distinctive character. Appellees attached copies of a Cedar Hill ordinance and regulation to their third amended petition and partial motion for summary judgment. The partial summary judgment motion provided more discussion about the City's ordinances and regulations, but did not request the declaration made by the trial court in its order and final judgment.

Although appellees' live pleading and motion for partial summary judgment allege appellants' destruction of trees and vegetation violate the City of Cedar Hill's ordinances and regulations, appellees never pleaded a cause of action arising from the alleged violation of those ordinances and regulations or requested relief on those bases. Thus, the trial court's order and judgment grant relief that was not requested and do not conform to the pleadings.

We also conclude the issue was not tried by consent. Appellees' discussion of the Cedar Hill ordinances and regulations did not seek judgment from the trial court prohibiting appellants from violating any ordinances and regulations. Rather, appellees included the City's regulations as part of their extensive description about the uniqueness and fragility of their properties and why their properties need to be protected from development—including development of the road Easement proposed by appellants. For example, in their motion for summary judgment, appellees stated: "Because of the fragile, unique nature of Dogwood Canyon, the City of Cedar Hill created ordinances and escarpment zone regulations strictly limiting development and clearing rights." Appellants presented no evidence regarding the City's ordinances and regulations.

After examining the record, we conclude the evidence does not show the issue of whether the trial court should prohibit appellants from violating the City of Cedar Hill's ordinances and

regulations was tried by consent. The ordinances and regulations were presented to illuminate that appellees' land is unique and fragile and has been recognized as such by the City which has afforded appellees' land protection. The circumstances do not indicate both parties understood the issue of prohibiting appellants from violating those ordinances was being tried by consent. *See Hampden Corp.*, 331 S.W.3d. at 495-96.

### 3. Conclusion

We sustain appellants' first issue. We modify the trial court's judgment and delete the trial court's declaration that the road Easement "Does not provide the owner(s) of the Dominant Estates with the right to use the road easement for any purpose that would result in violation of applicable city, state, or federal ordinances, statutes, or laws."[4]

## B. Plain Language of the Easement

In their second issue, appellants argue the trial court's judgment is inconsistent with the plain language of the Easement. The judgment states the road Easement "Does not provide the owner(s) of the Dominant Estates with any right to excavate the land or otherwise clear or remove trees along the easement." In response, appellees argue the trial court's judgment does not prevent appellants from building a road, although it may preclude appellants from building the type of road they desire.

### 1. Interpretation of Easements

A property owner's right to exclude others from his or her property is recognized as "'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)). A landowner may grant an easement which

---

[4] We do not conclude appellants have the right to violate ordinances and regulations of the City of Cedar Hill. We only conclude the trial court lacked jurisdiction to enter judgment precluding appellants from violating ordinances and regulations because the issue was not pleaded or tried by consent.

relinquishes a portion of the right, but the relinquishment is limited in nature. *Id.* An easement is a nonpossessory interest that authorizes its holder to use the property for only particular purposes. *Id.* (citing RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.2 cmt. d).

An easement exists for the benefit of the easement holder, and allows another to use the property for a specific purpose. *Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012). An easement implies a grant of "unlimited reasonable use such as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." *Id.* at 736. The "burden on the servient estate is secondary to ensuring that the purpose of the easement is reasonably fulfilled." *Id.* The owner of the servient estate may not interfere with the easement holder's right to use the servient estate for the purposes of the easement. *Id.* at 721.

We review the trial court's interpretation of the easement de novo. *See Eddins Enterps., Inc. v. Town of Addison*, 280 S.W.3d 544, 548 (Tex. App.—Dallas 2009, no pet.). The rules of contract construction and interpretation apply to an express easement agreement. *N. Tex. Mun. Water Dist. v. Ball*, 466 S.W.3d 314, 319 (Tex. App.—Dallas 2015, no pet.) (citing *DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)); *Eddins Enters.*, 280 S.W.3d at 548 (citing *Krohn*, 90 S.W.3d at 700–01). Unless the agreement is ambiguous, we interpret its provisions as a matter of law. *Ball*, 466 S.W.3d 319. As we interpret the easement provision at issue here, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Id.* (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We strive to harmonize and give effect to all the provisions of the agreement so that none will be rendered meaningless. *Id.*

When the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning. *Krohn*, 90 S.W.3d at 701. The easement's express terms provide the purpose for which the easement holder may use the property. *Id.*; *see also*

*Canyon Reg'l Water Auth. v. Guadalupe-Blanco River Auth.*, 258 S.W.3d 613, 616 (Tex. 2008) ("The express terms of the easement determine the scope of the easement holder's rights"). Only what is necessary to "fairly enjoy the rights expressly granted" passes by implication. *Krohn*, 90 S.W.3d at 701. The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest. *Id.* at 700-01.

     2.     *Meaning of "Road"*

The Easement states the servient estates are subject to "a 50 foot road easement for egress and ingress, being 25 feet on either side of centerline." The parties agree appellants have a "road easement" but disagree about whether that term entitles appellants to excavate the land or otherwise clear or remove trees along the Easement.

To resolve appellants' second issue, we must determine the meaning of the term "road," which is not defined by the Easement. Webster's dictionary defines road to mean:

> a: an open way or public passage for vehicles, persons, and animals: a track for travel or transportation to and fro serving as a means of communication between two places usu. having distinguished names   b: a public way outside of an urban district: HIGHWAY—contrasted with *street*   c: the part of a thoroughfare over which vehicular traffic moves: the space between curbs: ROADWAY

WEBSTER'S 3RD NEW INT'L DICTIONARY 1963 (1981). *See also* TEX. TRANSP. CODE ANN. §541.302(9) (defining "private road or driveway" to mean "a privately owned way or place used for vehicular travel and used only by the owner and persons who have the owner's express or implied permission), 541.302(11) (defining "roadway" to mean a highway . . . that is improved, designed, or ordinarily used for vehicular travel); *Harris v. State*, 499 S.W.2d 9, 10 (Tex. Crim. App. 1966) (concluding a parking lot was not a road because the parking lot "was neither a way, a passage nor a line of travel from place to place").

### 3. Road Easement

Applying the plain, ordinary, and generally accepted meaning of the term road, we conclude a 50-foot road easement for egress and ingress is a passageway over which vehicular traffic can move. The history of this Easement also indicates it must be fit for vehicular traffic. The Easement was created when the Mobley family divided its 287 acre piece of property and obtained zoning that the properties would be used as one-acre residential lots. The parcels now owned by appellants were then landlocked. The limited road Easement for ingress and egress gave the appellants' parcels of land access to the main road. At the time the 287 acre tract was subdivided, vehicular transportation was commonplace and persons living on property zoned for one-acre residential homes would need access for their vehicles to be driven between their homes and the main road. The road Easement provided such access.

The plain terms of the Easement allow the easement holders—here the appellants—to use the Easement for a narrowly defined purpose: a fifty-foot road for ingress and egress. *See Patterson*, 370 S.W.3d at 721. Although appellees presented the trial court with extensive testimony about the negative impacts they believe will result if appellants build a road, the Audubon appellees, as owners of the servient estates, may not interfere with appellants' right to use the servient estates for the purposes of the Easement. *See id.* As the holders of the Easement, appellants have the legal right to build and use a road on the Easement for the purposes of ingress and egress.

The trial court's judgment that appellants do not have the right to excavate the land or otherwise clear or remove any trees along the Easement conflicts with the plain meaning of the Easement. The record shows the land within the Easement is lush with vegetation, which is incompatible with creating a fifty-foot wide passageway or thoroughfare over which vehicular traffic can move. Therefore, we conclude the trial court's declaration that the Easement "[d]oes

not provide the owner(s) of the Dominant Estates with any right to excavate the land or otherwise clear or remove trees along the easement" is incompatible with the rights granted by the Easement.

### 4.    *Conclusion*

We sustain appellants' second issue.  We modify the trial court's judgment and delete the trial court's declaration that the road Easement "Does not provide the owner(s) of the Dominant Estates with any right to excavate the land or otherwise clear or remove trees along the easement."

## C.    **Definiteness of Judgment**

In their third issue, appellants argue the trial court's judgment is indefinite and uncertain. The judgment declares the easement "[i]s limited to providing the owner(s) of the Dominant Estates with a right to ingress and egress only."  Appellants assert this language does not sufficiently define the parties' rights.  They argue appellees pleaded for declaratory relief prohibiting appellants from "transporting machinery or materials along the easement" and it is unclear whether the trial court's judgment prohibits such activity.

In their third amended petition, appellees sought declarations:

> a.    That the scope of any easement along [appellee's] Land owned by [appellants] is limited to providing [appellants] with a right to ingress and egress only;
> b.    That the scope of any easement along [appellee's] Land owned by [appellants] does not provide [appellants] with any right to use the easement for development purposes, including, but not limited to, (1) running water, power, internet cable, or other utility lines along the easement, (2) building a road along the easement, and/or (3) transporting machinery or materials along the easement; and
> c.    That [appellants] have no right to bulldoze, destroy, remove, conceal, encumber, or otherwise damage [appellee's] Land.

The trial court's final judgment states the Easement "[i]s limited to providing the owner(s) of the Dominant Estates with a right to ingress and egress only."  Thus, the trial court granted

–13–

appellees' request defining the scope of the easement as being for ingress and egress only. Although the trial court's judgment also granted appellees the relief they requested by declaring the owners of the dominant estates do not have the right to "install power lines, water lines, cable lines, internet lines, or any other utility," the judgment does not grant the requested relief that the dominant estate cannot use the Easement for transporting machinery or materials along the easement. The judgment concludes: "The Court denies any other relief requested by the parties in this action." Applying the terms of the judgment, the trial court denied appellees' requested relief that appellants cannot transport machinery or materials along the Easement.

We overrule appellants' third issue.

## D.     Damages for Trespass

In their fourth issue, appellants assert the evidence is legally and factually insufficient to support the $88,493 in damages the trial court awarded to the Hurt appellees for the trespass on their land. Appellants concede they trespassed onto property outside of the Easement and the trespass caused some amount of damage. However, they claim most of the damaged or destroyed vegetation was on the Easement and they had a right to remove it. They argue that appellees' expert failed to segregate damage caused by the trespass from "damage" to vegetation on the Easement. In response, appellees assert all of the damage was caused to land outside of the Easement and, therefore, their expert was not required to segregate.

### 1.     Standard of Review

When examining a legal sufficiency challenge, an appellate court reviews the evidence in the light most favorable to the challenged finding and indulges every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). An appellant attacking the legal sufficiency of an adverse finding on which it did not have the burden of proof at trial, must demonstrate that there is no evidence to support the adverse finding. *See Exxon*

–14–

*Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). The ultimate test for legal sufficiency is whether the evidence would enable a reasonable and fair-minded fact finder to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. The fact finder is the sole judge of witness credibility and the weight to give their testimony. *See id.*

In a factual sufficiency review, an appellate court considers and weighs all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). When an appellant challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, an appellate court will set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The appellate court may not substitute its judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407.

 2. *Analysis*

Daneshian testified his backhoe cleared vegetation both on and off the Easement. Mr. Hurt testified he and his wife own the property on which appellants trespassed. On cross-examination, an Audubon executive testified:

> Q. So Audubon doesn't have any ownership interest in the property that my client [appellants] went onto with his tractor, correct?
> A. The property that was damaged by the trespass was the property of David Hurt. Much of the debris was pushed onto our property . . ..”
> Q. Okay. But the damage that we're talking about was contained within the David Hurt property, which is not owned by Audubon?
> A. That is correct.

The arborist who testified as an expert witness discussed damage to the Hurts' property. He testified about damage to the "the trespassed area" and estimated cost to begin replacing the damaged canopy is $88,493.

–15–

Although Daneshian stated most of the destroyed vegetation was on the Easement, there also is evidence all of the damage was on the Hurts' property. Further, the arborist testified he examined the "trespassed area," which would be the Hurts' property. The record is not well developed on this point. However, there is some evidence showing all the vegetation that was destroyed was on the Hurts' land and the arborist limited his consideration to this damage.

After reviewing the entire record, we cannot say there is no evidence to support the trial court's conclusion that the damage to the Hurts' property is $88,493. *See Exxon Corp.*, 348 S.W.3d at 215; *City of Keller*, 168 S.W.3d at 827. Nor can we conclude the evidence supporting the judgment is so weak as to make it clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176.

### 3. Conclusion

We overrule appellants' fourth issue.

## CONCLUSION

We modify the trial court's judgment by deleting the trial court's declarations that the road Easement:

"Does not provide the owner(s) of the Dominant Estates with the right to use the road easement for any purpose that would result in violation of applicable city, state, or federal ordinances, statutes, or laws" and

"Does not provide the owner(s) of the Dominant Estates with any right to excavate the land or otherwise clear or remove trees along the easement."

As modified, we affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

140108F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
# JUDGMENT

| | |
|---|---|
| UNITED SERVICES PROFESSIONAL GROUP, INC. D/B/A PYRAMID REALTY, MAJID HAMMASI, SADAT BASSAMPOUR FATEMEH, AND AL DANESHIAN, Appellants | On Appeal from the 162nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-10-04892-I. Opinion delivered by Justice Stoddart. Justices Fillmore and Richter participating. |

No. 05-14-00108-CV      V.

DAVID M. HURT, KIMBERLY R. HURT, NATIONAL AUDUBON SOCIETY, INC., AND DALLAS COUNTY AUDUBON SOCIETY, INC., Appellees

In accordance with this Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the words "Does not provide the owner(s) of the Dominant Estates with the right to use the road easement for any purpose that would result in violation of applicable city, state, or federal ordinances, statutes, or laws" and "Does not provide the owner(s) of the Dominant Estates with any right to excavate the land or otherwise clear or remove trees along the easement" from the judgment.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellants United Services Professional Group, Inc. d/b/a Pyramid Realty, Majid Hammasi, Sadat Bassampour Fatemeh, and Al Daneshian recover their costs of this appeal from appellees David M. Hurt, Kimberly R. Hurt, National Audubon Society, Inc. and Dallas County Audubon Society, Inc.

Judgment entered this 7th day of December, 2015.