**AFFIRM; and Opinion Filed January 24, 2024.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-23-00180-CV

**STEPHEN RICHARD SELINGER, Appellant**
**V.**
**CITY OF MCKINNEY, TEXAS, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-04150-2018**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Kennedy
Opinion by Justice Kennedy

Following the City Council's denial of his plat application for subdivision of

a tract of land located in the extraterritorial jurisdiction of the City, Stephen Richard

Selinger filed suit against appellee the City of McKinney. After a bench trial, the

trial court rendered judgment in favor of the City. On appeal, Selinger urges the trial

court erred (1) in rendering judgment in favor of the City on his takings claim and

(2) in denying his request for a declaration that portions of the City's subdivision

ordinance are unconstitutional and conflict with section 212.904 of the Texas Local

Government Code. We affirm the trial court's judgment. Because the dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

In 2018, Selinger entered into an option contract with Nancy Dail for the purchase of an 82-acre tract of land located in the City's extraterritorial jurisdiction (the "Property"). At that time, the Property did not have access to the City's water and sewer services, as the closest transmission lines were located approximately three miles from the Property.

In early 2018, Selinger submitted a plat application to the City proposing to subdivide the Property into approximately 331 residential lots, in a development that would be called Cambridge Meadows. His application further indicated he would construct sewer infrastructure for the subdivision, including a package treatment plant permitted through the Texas Commission on Environmental Quality, and that he would arrange water service through the North Collin Special Utility District.

The City concluded Selinger's plat application did not comply with the City's subdivision ordinance and standards for various reasons, including that it did not provide for the connection of the proposed subdivision to City water and sewer systems and did not provide for the payment of City water and sewer impact fees. In an effort to work with Selinger, despite his application's shortcomings, the City proposed entering into a Facilities Agreement (Rough Proportionality of Required Improvements) that contained a number of waivers and variances to the City's

–2–

subdivision ordinance requirements, which were necessary to develop the Property as Selinger proposed, and which required Selinger to pay water and sewer impact fees to the City, ultimately calculated to be $482,214.02, if, and only if, the City ever extended its water and sewer transmission lines to the Property.[1]  According to Selinger, the only issue he had with the proposed Facilities Agreement was the contingent exaction of the water and sewer impact fees.

Selinger's plat application was before the City Council at its August 6, 2018 meeting.  At that meeting, Selinger's attorney advised the City Council that Selinger would not agree to pay the proposed impact fees.  Because Selinger declined to enter into the Facilities Agreement, the review of his plat reverted to the requirements of the subdivision ordinance.  Without the Facilities Agreement, Selinger's plat application did not comply with the ordinance.  Thus, the City Council denied Selinger's plat application.

---

[1] The proposed Facilities Agreement contained the following provision:

> At such time as the Property or any part or portions of the Property is connected to the City's potable water system and/or sanitary sewer system, **DEVELOPER shall pay all then applicable tap fees, connection fees, meter fees, impact fees, pro rata fees and/or service fees** as may be required by CITY regardless of the name by which such fees and charges may be called **subject to the requirements of state law**.  A deed restriction will be recorded for the Property and the Subdivision thereon notifying future lot purchasers that each owner of a lot within the Cambridge Meadows Addition will be required **to connect** to each such Future Transmission Line for potable water or sanitary sewer, **at no cost to City**, within 180 days after each such Future Transmission Line becomes operational.

(emphasis added).  The City determined, and informed Selinger, that the amount of such fees would be $482,214.02, which was calculated using a fee schedule that was in effect in 2018.  The amount would not change even though it might be years, possibly decades, before the City extended the lines to the Property and payment would be due.

Ten days later, Selinger and Dail filed suit against the City, asserting various claims in connection with the denial of Selinger's plat application. The City filed a plea to the jurisdiction challenging Selinger and Dail's pleadings on several grounds, chief among them lack of ripeness and, with respect to Selinger, lack of standing. The trial court sustained the City's plea and dismissed Selinger and Dail's lawsuit. Selinger and Dail appealed that ruling, and this Court affirmed the dismissal of their request for attorney's fees on their takings claims under the Texas Constitution, which was not challenged on appeal, and otherwise reversed the trial court's order dismissing Selinger and Dail's lawsuit and remanded the case for further proceedings. *See Selinger v. City of McKinney*, No. 05-19-00545-CV, 2020 WL 3566722, at \*12 (Tex. App.—Dallas July 1, 2020, no pet.) (mem. op.).

At the time of trial, Dail was no longer a party to the suit and Selinger's live pleading asserted the City's exaction of the contingent water and sewer impact fees was an unconstitutional taking of property in violation of the United States and Texas Constitutions and that his plat was denied solely because of his refusal to agree to the exaction. In addition, Selinger sought a declaration that the City's subdivision ordinance requiring connection to water and sewer facilities and the payment of applicable water and sewer impact fees as a condition of development is unconstitutional and a violation of section 212.904 of the Texas Local Government

Code (addressing "Apportionment of Municipal Infrastructure Costs").[2] Selinger asserted that "[b]y requiring that the property owner request such service, pay for such service later when service is still not wanted or needed, and record a document agreeing to this in the property records, the City's Subdivision Ordinance is unconstitutional as it violates the Takings Clause of the Texas and United States Constitutions." Selinger also claimed requiring him to pay water and sewer impact fees when he would not use or otherwise impact such services constitutes a deprivation of his due process rights.

The case proceeded to a bench trial on November 14, 2022. At trial, the parties stipulated to various facts including the following:

> The Property . . . was located within the City's Certificate of Convenience and Necessity ("**CCN**") for the provision of water service and, as a result the City had the right to provide water service to the Property.[3]

> The Cambridge Meadows plat did not comply with [the City's] standards because, among other requirements, the plat did not provide for the connection of the proposed subdivision to City water and sewer facilities, and it did not provide for payment of required City water and sewer impact fees.

> The City's subdivision, utility, and impact fee ordinances require connection to water/sewer facilities and the payment of applicable

---

[2] The Texas Declaratory Judgment Act provides that if a municipal ordinance is alleged to be unconstitutional, "the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard." TEX. CIV. PRAC. & REM. CODE § 37.006(b). Selinger represented in his live pleading that he complied with section 37.006(b)'s requirement.

[3] A CCN is a permit issued by the Public Utility Commission which authorizes and obligates a retail public utility, including a municipality, to furnish, make available, render, or extend continuous and adequate water or sewer utility service to a specific geographical area. 16 TEX. ADMIN. CODE § 24.3; 30 TEX. ADMIN. CODE § 291.3(3).

water/sewer impacts fees as a condition of development. Additionally, because the Property was located in the City's water CCN, the City had the exclusive right to provide water service to the Property absent an agreement by the City to allow another water service provider to provide water to the Property.[4]

Aside from a brief testimonial comment by Selinger's attorney,[5] Selinger was his only witness at trial. He urged that the package plant arrangements he made and

---

[4]  In his reply brief, Selinger contends he testified contrary to this stipulation by stating the Property "was in two CNNs. There was overlapping CCNs. It was in both McKinney and North Collin" without objection, and claims this stipulation is therefore mere evidence, rather than a judicial admission. In *Mendoza v. Fidelity and Guaranty Insurance Underwriters, Inc.*, the Supreme Court of Texas drew a distinction between testimonial declarations and true judicial admissions by stating:

> A party's testimonial declarations which are contrary to his position are quasi-admissions. They are merely some evidence, and they are not conclusive upon the admitter. (citations omitted) The weight to be given such admissions is decided by the trier of fact. These are to be distinguished from the true judicial admission which is a formal waiver of proof usually found in pleadings or the stipulations of the parties. A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. (citations omitted).

606 S.W.2d 692, 694 (Tex. 1980). In this case, after both parties rested and closed, Selinger's attorney moved to withdraw this particular stipulation stating his client informed him that he did not agree to the stipulation. The trial court denied his request, and Selinger does not challenge that ruling in his opening brief or the trial court's finding "because the Property was located within the City's water CCN, the City had the exclusive right to provide water service to the Property absent an agreement by the City to allow another water service provider to provide water to the Property." Thus, Selinger waived any complaint with respect to the weight of this stipulation and finding. And, nevertheless, as the trial judge noted, she was the "Judge of the credibility of the evidence, the weight to be given it."

With respect to CCNs, Selinger asks this Court to take judicial notice of various documents, including an executed settlement agreement entered into by the City of McKinney, the City of Melissa, and the North Collin County Special Utility District amending the North Collin County Special Utility District's CCN. Generally, appellate courts take judicial notice of facts outside the record only to determine jurisdiction or to resolve matters ancillary to decisions which are mandated by law. *SEI Bus. Sys., Inc. v. Bank One Texas, N.A.*, 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no writ); *see Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 624 (Tex. 2012). Accordingly, we decline Selinger's request that we take judicial notice of the documents he attached to his reply brief.

[5] Selinger's attorney stated:

> Your honor, Mr. Selinger - - except I would like to, I guess, testify briefly on a point [the City's attorney] raised in his opening. I didn't think that this argument would come in so - - we don't have a transcript of the proceedings before the appellate court, but my recollection is that the issue came up - - it was not in the pleadings, but the issue came up

his agreement with the North Collin Special Utility District were permanent sewer and water solutions, making it unnecessary for the City to construct any infrastructure to serve the tract now or in the future. Selinger acknowledged that if he connected to the City water and sewer systems the approximate $482,000 impact fee would be justified, but claimed any exaction imposed by the City would constitute a compensable taking because he did not plan on using the City's systems.

On cross-examination, Selinger acknowledged that this is not the only lawsuit he had pending against the City regarding the Property, that in 2019, he filed a lawsuit against the City as a representative of Norhill Energy, LLC regarding a different plat application for the same Property, and that he sold the option contract he had with Dail to Poetry Road, LLC, an entity he controls, for an nominal sum, approximately $10 or $100, which then purchased the Property from Dail. He further established that the City approved a plat application that Poetry Road, LLC submitted, and Poetry Road, LLC sold the Property to D.R. Horton, a home builder, netting a profit of $3,700,000.

The City's sole witness at trial was Michael Quint, the City's Executive Director of Development Services. Through Quint, the City established the following. Quint oversees Building Inspections, Code Services, and the Engineering and Planning Departments for the City. The Engineering and Planning Departments

---

before the Court and I informed the Court that it was, in fact, an option contract so the Court was fully aware of that in issuing its opinion.

oversee and process plats in the City and the City's extraterritorial jurisdiction. Quint was familiar with the Cambridge Meadows plat application Selinger submitted to the City. Selinger's plat application did not comply with the City's subdivision ordinance requirements. In an effort to accommodate Selinger, the City offered him a Facilities Agreement to allow the Cambridge Meadows plat to be approved with variances and waivers from the City's subdivision standards. Among other things, the Facilities Agreement required Selinger to pay water and sewer impact fees to the City if, and only if, the transmission lines were extended to the Property. Selinger proposed a different version of the Facilities Agreement that was not acceptable to the City.

Quint further established the following with respect to the impact fees. The City's impact fees are calculated and determined in accordance with Chapter 395 of the Texas Local Government Code, which governs the financing of capital improvements required by new development, based on the impacts generated on the overall system necessary to serve new development on a unit-by-unit basis. The impact fees assessed take into account the impacts of proposed developments on the City's water and sewer systems. The 2018 impact fees that were contemplated by the Facilities Agreement in Selinger's case were based on engineering studies prepared by engineers and based on land-use studies and assumptions and are intended to apply evenly to every new development. Quint addressed Plaintiff's Exhibit 10, which included an email from the City's attorney to Selinger's attorney

–8–

providing him with the ordinance provision under which the water and sewer assessment was calculated, namely section 130-27(a)(4) of Ordinance Number 2013-11-109. He indicated that the last page of Plaintiff's Exhibit 10 contained a table outlining actual water and wastewater impact fees charged for plats recorded on or after November 20, 2013, and which was still in effect when Selinger submitted his plat application. Using the lowest fees associated with a 3/4th inch meter line, resulted in water and sewer impact fees per residential lot of $1,294.70 and $162.14, respectively, resulting in a total impact fee per residential lot of $1,456.84. When the total impact fee of $1,456.84 per residential lot is applied to the 331 lots in Selinger's proposed subdivision, it calculates to (subject to rounding errors) a total impact fee of $482,214.04 for the entire Property, which is approximately the $482,214.02 in water and sewer impact fees at issue here.

Quint further established that in general there is a nexus between the City's water and sewer impact fees that are charged and the impact of the development on the City's water and sewer systems, and the impact fees are roughly proportional to the impact of development on the City's water and sewer systems. If Selinger's development were to connect to the City's water and sewer systems, it would have an impact on those systems and the impact fees contemplated by the Facilities Agreement are roughly proportional to the impact of Selinger's development on those systems. Without an approved Facilities Agreement, Selinger's plat did not meet the City's subdivision requirements.

In addition, with respect to whether the proposed development of the Property would benefit from access to the City's water and sewer facilities, Quint established the City is a reliable source of high-quality water with sufficient water pressure to provide fire flow to the Property, which fire flow would allow for fire hydrants for emergency use with sufficient water pressure for fire personnel to fight fires. The City's sewer is very reliable and would relieve the developer of the Property from the ongoing obligation to operate and maintain an on-site sewage package treatment plant. There are many instances where, over time, such on-site sewage package treatment plants deteriorate, and residents of the developments served by the treatment plants will request that the City provide them with City sewer so that they do not have to pay for the regular maintenance of the treatment plants. Quint further stated that even if the Property did not connect to the City water and sewer lines, the infrastructure would be there and could potentially make the Property more marketable.

On December 15, 2022, the trial court rendered judgment in favor of the City. Thereafter, the trial court issued extensive findings of fact, 118 in total, and conclusions of law, 30 in total, in support of its judgment. In its findings of fact, the trial court included the parties' stipulated facts. In addition, among the trial court's many findings are the following:

> Selinger does not dispute the calculation of the $482,214.02 in impact fees; but rather is disputing whether he should be required to use City

water and sewer services and pay the impact fees since he had other water and sewer sources available to serve the Property.

Selinger is not contending that in the event that the Property did connect to McKinney's water and sewer system, that the impacts of that subdivision would not put a burden on the City's water or sewer system.

Selinger is not contending that if the Property did connect to the City's water and sewer systems, that the impacts of the development on McKinney's water and sewer system impacts would not support the roughly $482,000 impact fee number.

After detailing the facts established through Quint's testimony, the trial court found:

Quint's testimony was direct, honest, credible, and qualified, and was useful to the Court. Given Quint's involvement in the City's platting and impact fee processes, and his familiarity with Selinger's Cambridge Meadows plat, the Court finds that Quint's opinion that the plat did not meet the City's subdivision requirements in the absence of waivers and variances to be credible and entitled to great weight by the Court.

Similarly, the Court finds that Quint's opinion that the impact fees contemplated by the Facilities Agreement were roughly proportional to the impact of Selinger's development, if such development were to connect to the City's water and sewer system, to be credible and entitled to great weight by the Court.

Quint explained to the Court's satisfaction how the impact fee was calculated using Plaintiff's Exhibit 10.

The trial court further found, when discussing the exhibits that were admitted into evidence:

The Facilities Agreement Council Materials . . . provided that the City had not been provided any agreements between Selinger and North Collin Water Supply Corporation that demonstrated that Selinger had agreed to make necessary improvements to North Collin's system to provide the required potable water and fire flow service to the Cambridge Meadows subdivision.

The Facilities Agreement Council Materials further provided support

that the documentation provided to the City showed that the potable water and fire flow service required to serve the Cambridge Meadows subdivision did not currently exist in the North Collin system.

The trial court found there was no evidence or insufficient evidence to establish:

That the City's subdivision ordinance is unconstitutional and in violation of Texas Local Government Code Section 212.904.

That the City violated Selinger's right to due process.

That the City's actions constituted a taking of Selinger's property.

The trial court found that credible and sufficient evidence was provided to establish:

That the proposed exaction in the Facilities Agreement, if applied to Selinger's proposed development, would have been roughly proportional to the anticipated impact of the proposed development on McKinney's water and sewer system and the City's construction of water and sewer infrastructure to serve Selinger's property under the City's utility CCN.

That the $482,214.02 fee was based on McKinney's 2018 water and sewer impact fees, which fees were adopted after extensive studies were performed by the City's engineering consultants, and such fees are roughly proportional to the impact of the developments for which the fees are assessed and collected.

Selinger is the alter ego of Poetry [Road, LLC], which is an entity that Selinger wholly controls. Selinger assigned his option contract to purchase the property to Poetry, which entity then in turn sold the Property to D.R. Horton, a developer, for a profit of approximately $3.8 million. As a result, all compensation received for the sale of the Property to Poetry is tantamount to Selinger receiving such funds as Selinger is the sole principal in Poetry. Selinger has used Poetry as a façade to cover his personal dealings and the corporate veil in this instance must be pierced.

Among the trial court's conclusions of law were the following:

The City did not take Selinger's Property in violation of the Texas and

–12–

United States Constitutions.

The proposed exaction of which Selinger complains – a contingent liability payment obligation of approximately $482,000 contained in an unexecuted and unapproved Facilities Agreement between Selinger and the City – if applied to Selinger's proposed development would not constitute a taking of Selinger's property under Article I, Section 17 of the Texas Constitution or the United States Constitution because the fee, if applied, would be roughly proportional to the anticipated impact of the proposed development on the City's water and sewer system and the City's construction of water and sewer infrastructure to serve the Property under the City's utility CCN.

The $482,214.02 impact fee was based on the City's 2018 water and sewer impact fees, which fees were adopted after extensive studies were performed by the City's engineering consultants, and such fees are roughly proportional to the impact of the developments for which the fees are assessed and collected.

Selinger is not entitled []to a declaratory judgment on any of the matters requested in the Petition.

Selinger, or an entity that Selinger controls, sold the Property for a profit and, therefore has suffered no economic damages in this matter.

The City's subdivision ordinance is not unconstitutional and in violation of Section 212.904.

The impact fee exaction is roughly proportional as it is an impact fee calculated and established through the impact fee process.

The Court finds that Selinger is the alter ego of Poetry, which is the entity who sold the Property to D.R. Horton, for a profit of approximately $3,700,000. All compensation received for the sale of the Property in this case to Poetry is tantamount to Selinger receiving such funds as Selinger is the sole principal in Poetry.

## DISCUSSION

## I.       Standard of Review

This case is before us on appeal from a bench trial after which the trial court issued findings of fact and conclusions of law at Selinger's request. In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When a party challenges a trial court's findings of fact on legal or factual sufficiency grounds, we review the trial court's findings under the same sufficiency of the evidence standards used when determining if sufficient evidence exists to support jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When a party challenges a trial court's conclusions of law, we review the challenged conclusions de novo. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The trial court's conclusions of law are not subject to challenge for lack of factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *Id.*; *Dallas Cnty. v. Sweitzer*, 881 S.W.2d 757, 763 (Tex. App.—Dallas 1994, writ denied); *see also Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex. App.—Dallas 2007, no pet.) (trial court's conclusions of law are independently evaluated to determine whether trial court correctly drew legal conclusions from facts). We are not bound by the trial court's legal conclusions, but conclusions of law will be upheld on appeal if the judgment

–14–

can be sustained on any legal theory supported by the evidence. *Sheetz*, 503 S.W.3d at 502.

Before starting our analysis, we note that, in his opening brief, Selinger generally challenges the trial court's disposition of his takings claim and his request for a declaration the City's subdivision ordinance violates article 212.904 of the Local Government Code and is an unconstitutional taking,[6] but he does not specifically challenge any of the trial court's findings of fact other than the trial court's alter ego finding. Unchallenged findings of fact are binding on this Court, unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Walker*, 232 S.W.3d at 907. In his reply brief, Selinger clarified that his position is that the parties' factual stipulations left the trial court with pure legal questions that should be reviewed by this Court de novo. Thus, it appears Selinger accepts the trial court's factual findings, other than the alter ego finding,[7] and is challenging whether the findings support the trial court's conclusions of law and judgment in favor of the City on his takings claim and request for a declaratory judgment.

## II.  Exactions as a Potential Basis for a Takings Claim

Selinger's first issue addresses the trial court's ruling on his takings claim.

---

[6] Selinger's briefing on appeal does not challenge the trial court's judgment with respect to his due process claim. That claim will not be further mentioned or discussed herein.

[7] As stated *supra* in footnote 4, Selinger attempts to challenge the trial court's findings with respect to the City's CCN with new evidence. As we stated *supra*, we will not take judicial notice of the documents Selinger attached to his reply brief.

–15–

Takings can be classified as either physical or regulatory. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). A physical taking occurs when the government authorizes an unwarranted physical occupation of an individual's property. *Id.* A regulatory taking may occur when a government conditions the granting of a permit or some other type of government approval on an exaction from a landowner seeking that approval. *See Dolan v. City of Tigard*, 512 U.S. 374, 384–85 (1994); *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 634 (Tex. 2004). An exaction occurs if a governmental entity requires an action by a landowner as a condition to obtaining government approval of a requested land development. *Mira Mar Dev. Corp. v. City of Coppell*, 421 S.W.3d 74, 82 (Tex. App.—Dallas 2013, pet. denied) (citing *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 71 S.W.3d 18, 30 (Tex. App.—Fort Worth 2002), *aff'd, Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620 (Tex. 2004); *City of Carrollton v. RIHR, Inc.*, 308 S.W.3d 444, 449 (Tex. App.—Dallas 2010, pet. denied)). An exaction can occur even if the owner refuses to agree to the condition. *RIHR Inc.*, 308 S.W.3d at 449. And the definition of an exaction is broad enough to include a demand that the owner assume a contingent liability. *Selinger*, 2022 WL 3566722, at *5.

Selinger's takings claim falls under the category of a regulatory taking by exaction. For an exaction to be compensable, it must be a cost that, in fairness and justice, should be borne by the public instead of the individual. *Mira Mar*, 421

S.W.3d at 82. The touchstone of the constitutional takings protections is that a few not be forced to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 835 n. 4 (1987); *Stafford Estates*, 135 S.W.3d at 642. To apply this sense of "fairness and justice," the Texas Supreme Court has adopted a "rough proportionality" test to determine whether an exaction constitutes a compensable taking:

> [C]onditioning government approval of a development of property on some exaction is a compensable taking unless the condition (1) bears an essential nexus to the substantial advancement of some legitimate government interest and (2) is roughly proportional to the projected impact of the proposed development.

*Stafford Estates*, 135 S.W.3d at 634; *see also Dolan*, 512 U.S. at 391; *Nollan*, 483 U.S. at 837. Under this test, the government must make an "individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development." *Stafford Estates*, 135 S.W.3d at 633 (citing *Dolan*, 512 U.S. at 391). Thus, after the plaintiff proves an exaction, the burden of proof shifts to the government to prove the exaction imposed meets the test. *See id.* at 643; *Mira Mar*, 421 S.W.3d at 83. The government's proof of rough proportionality of the impact must be more than bare conclusions; the government is "required to measure that impact in a meaningful, though not precisely mathematical, way, and must show how the impact, thus measured, is roughly proportional in nature and extent to the required improvements." *Stafford Estates*, 135 S.W.3d at 643.

Selinger's first issue calls upon us to review the trial court's conclusion the exaction of the impact fees did not constitute a compensable taking. The trial court's conclusion the City did not take Selinger's Property in violation of the Texas and United States Constitutions flowed from its factual findings that the exaction bears an essential nexus to the substantial advancement of some legitimate government interest and the impact of the proposed development on the City's water and sewer systems and is roughly proportional to the projected impact of Selinger's proposed development.

Chapter 395 of the Local Government Code addresses the Financing of Capital Improvements by New Development in Municipalities, Counties, and Certain Other Local Governments. TEX. LOC. GOV'T CODE § 395.011(a), *et. seq*. Chapter 395 permits the imposition of impact fees to pay the costs of constructing capital improvements or facilities expansions. *Id.* § 395.012. The municipality determines the amount of impact fees by preparing a "Capital Improvements Plan." *See id.* § 395.014. The plan is prepared by a licensed engineer and must include: an analysis of the total capacity, the level of current usage, and commitments of usage of existing capital improvements; the total number of projected service units necessitated by and attributable to new developments in the service area; and the projected demand for capital improvements or facility expansions required by new service units projected over a reasonable period of time, not to exceed 10 years. *Id.* § 395.014(a). Chapter 395 also sets out the method for determining the maximum

fee per service unit. *See id.* § 395.015.

At trial, the City established a capital improvements plan was prepared in accordance with Chapter 395 of the Texas Local Government Code and was based on engineering and land-use studies and permitted assumptions. The plan is a precise mathematical formulation of the impact of development on the City's water and sewer facilities. From this plan, the City could determine Cambridge Meadows' projected impact with precision that far exceeded the constitutional requirement of rough proportionality. *See Mira Mar*, 421 S.W.3d at 97. Because the statute requires the impact fees be spent only on the designated capital improvements, water and sewer services in this case, the impact fees bear an essential nexus to the substantial advancement of legitimate government interests. *See* Loc. Gov't § 395.012; *see also Mira Mar*, 421 S.W.3d at 97. Accordingly, the trial court did not err in concluding the proposed exaction, if applied to Selinger's proposed development, would not constitute a taking of Selinger's property because the impact fee, "if applied, would be roughly proportional to the impact of the proposed development on [the City's] water and sewer system and the City's construction of water and sewer infrastructure to serve the Property under the City's utility CCN."

Nevertheless, Selinger asserts because he had no intention of ever using the City's water and sewer systems, the City's proposed impact fee exaction lacks the required essential nexus and rough proportionality. Thus, contends Selinger, the extension of sewer and water transmission lines to the Property, if it ever happens,

–19–

will confer no benefit on the Property. We find Selinger's argument unavailing for the following reasons.

Selinger cites no authority in support of his contention that his unilateral decision not to connect to the City's water and sewer transmission lines, if and when they become available to the Property, impacts the essential nexus and rough proportionality analysis here. Moreover, with respect to the water impact fee, Selinger stipulated, and the trial court found, that the Property is located within the City's water CCN and because it is so located, the City had the exclusive right to provide water service to the Property absent an agreement by the City to allow another water service provider to provide water to the Property. Thus, Selinger acknowledged the City's authority to require connection to its water service when, and if, it became available.[8] Selinger's assertion that he did not want the City's water did not impact the City's rights.

Moreover, with respect to both the water and sewer impact fees, the City established through Quint, whose testimony the trial court found to be "direct, honest, credible, and qualified," that the Property would benefit from receiving reliable City utilities and might become more marketable. With respect to Selinger's takings claim, we conclude the trial court correctly drew its conclusion, "The City

---

[8] If Selinger wanted to indefinitely obtain water from another provider and the City refused to assent, the appropriate action would have been to file an application with the Texas Commission on Environmental Quality seeking to amend the City's CCN. *See* 16 TEX. ADMIN. CODE § 24.227 (setting forth criteria for granting or amending a CCN). This he did not do.

did not take Selinger's Property in violation of the Texas and United States Constitutions," from the facts. Accordingly, we overrule Selinger's first issue.

Based upon our resolution of Selinger's first issue, and conclusion the trial court did not err in concluding the impact fee exaction did not constitute a compensable taking and Selinger's plat was properly denied because Selinger refused to agree to the exaction, we need not address his second issue urging other bases advanced by the City at trial for denying his plat were pretextual. TEX. R. APP. P. 47.1. In addition, we need not address Selinger's third, fifth and sixth issues addressing the measure of damages and the trial court's alter ego finding, as they are moot absent a finding a compensable taking occurred. *Id.*

## III. Section 212.904 Texas Local Government Code

While it is not entirely clear from Selinger's opening brief, it appears from the relief he requests,[9] that, in his fourth issue, he is challenging the trial court's conclusions, "The City's subdivision ordinance is not unconstitutional and in violation of Section 212.904" and "Selinger is not entitled [] to a declaratory judgment on any of the matters requested in his Petition."

A city's ordinance is presumed to be valid. *Eddins Enters., Inc. v. Town of Addison*, 280 S.W.3d 544, 547 (Tex. App.—Dallas 2009, no pet.). However, no

---

[9] In his prayer, Selinger asks, in part, that this Court "declare that the City's Subdivision Ordinance violates Local Government Code § 212.904 in regard to the sections requiring unlimited extensions of City water and sewer lines and road." At trial, Selinger's attorney represented that all issues were resolved except the City's requirement that Selinger pay impact fees of sewer and water service under the City's subdivision ordinance. Accordingly, we will not discuss any road requirements.

–21–

city ordinance "shall contain any provision inconsistent with the Constitution of this State, or of the general laws enacted by the Legislature of this State." *Id.* (quoting TEX. CONST. art. XI, § 5). The party challenging the ordinance bears an "extraordinary burden" to establish the ordinance is invalid or that no conclusive or even controversial or issuable fact or condition exists that would authorize passage of the ordinance. *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792–93 (Tex. 1982). We review de novo the trial court's ruling on the validity of an ordinance, and we consider all the circumstances and determine as a matter of law whether the legislation is invalidated by a relevant statute or constitutional provision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

Selinger's live pleading did not identify a specific City ordinance in connection with his request for a declaration the City's subdivision ordinance requiring "connection to water/sewer facilities and the payment of applicable water/sewer impact fees as a condition of development" is unconstitutional. But by stipulation, incorporated into the trial court's findings of fact, the parties recognized that "the City's subdivision, utility, and impact fee ordinances require connection to water/sewer facilities and the payment of applicable water/sewer impacts fees as a condition of development." Selinger's complaint with respect to these subdivision requirements is in essence, a restatement of his taking by exaction complaint, but on a more global basis. We have already resolved Selinger's takings issue against him, and he does not advance any argument that would invalidate the City's requirements

–22–

on a wholesale basis.

With respect to Selinger's assertion the City's subdivision ordinance violated section 212.904 of the Local Government Code, at trial, Selinger's attorney identified section 130-27 (Assessment of impact fees)[10] and schedule 1, table A,[11] attached to Ordinance Number 2013-11-109 as the specific provision Selinger claimed violated section 212.904 of the Local Government Code. In his reply brief, Selinger identifies, for the first time, sections 142-6 and 142-105 of the City's subdivision ordinance, which were once located in Chapter 142 of the City's Code of Ordinances addressing improvements and containing 203 sections,[12] claiming

---

[10] Section 130-27(a)(4), located in Chapter 130 of the City's Code of Ordinances addressing land development regulations, provides that "[f]or a new development for which recordation of the final plat occurred on or after November 20, 2013, assessment impact fees shall occur at the time of final plat recordation and shall not exceed the maximum assessable impact fee per service unit (post credit) as set forth in schedule 1, table D, attached to Ord. No. 2013-11-109 and incorporated herein by reference, for each meter size and meter type for each proposed development unit as set forth in schedule 1, table D."

[11] Schedule 1, table A, identifies the "Maximum assessable utility impact fee if date of final plat recordation is prior to September 1, 2003 for which no replatting is necessary." We believe Selinger intended to reference table D, which sets forth impact fees if the date of final plat recordation is on or after November 20, 2013, and is the table the City used to calculate the impact fees applicable in this case.

[12] The City's current Code of Ordinances indicates that Chapter 142 is reserved and instructs for previous contents of this provision, Subdivision Regulations, please see Chapter 150, "Unified Development Code," which was adopted on November 15, 2022.

As it existed at the time Selinger's plat was denied, section 142-6 provided:

> All of the improvements required under these regulations, or improvements specified in the comprehensive plan of the city, or improvements which, in the judgment of the director of engineering are necessary for the adequate provision of streets, utilities, drainage, services, and facilities to the subdivision and to surrounding areas of the city, shall be constructed at the sole expense of the developer, **unless other provisions are approved by the city council**. All improvements required by this chapter shall be constructed by the developer and accepted by the director of engineering prior to filing an associated plat with the county, unless otherwise specified in a binding contractual facilities agreement. Payment for any and all improvements that are not to be made at the time of the primary construction of the subdivision or development shall be made a part of a binding contractual facilities agreement, signed by the developer and approved by the city.

–23–

they violate section 212.904 of the Local Government Code because they do not contain a proportionality requirement. A complaint may not be raised for the first time in a reply brief. Not only is Selinger's reference to ordinances 142-6 and 142-105 untimely, it also does not comport with his assertion at trial. *See* TEX. R. APP. P. 33.1(a)(1)(A) (record must show complaint was made to trial court with sufficient specificity to make court aware of complaint); *see also Whisenant v. Arnett*, 339 S.W.3d 920, 926 (Tex. App.—Dallas 2011, no pet.) (complaint on appeal must comport with complaint at trial); *Threlkeld v. Urech*, 329 S.W.3d 84, 88 (Tex. App.—Dallas 2010, pet. denied) (complaint may not be raised for first time on appeal). Accordingly, Selinger has waived any complaint with respect to sections 142-6 and 142-105. *Russell v. Campbell*, 725 S.W.2d 739, 749 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

---

(emphasis added).

Section 142-105 provided, with respect to water and sewer:

The improvements referenced herein must be constructed per the engineering design manual, standard construction details and specifications and accepted by the director of engineering prior to filing an associated plat for record with the county clerk, unless otherwise specified in an approved facilities agreement.

. . .

(8) *Sanitary sewers*. Sanitary sewer facilities shall be provided per the engineering design manual to adequately service the subdivision and conform to the city wastewater collection system master plan. Should the subdivision abut and use a sewer main of the city, the developer shall pay to the city, a pro rata charge as prescribed by ordinance for use of same.

(9) *Water*. Water systems shall have a sufficient number of outlets and shall be of sufficient size to furnish adequate domestic water supply, to furnish fire protection to all lots, and to conform to the city water distribution master plan. Water system facilities shall be provided per the engineering design manual.

To the extent Selinger is claiming section 130-27(a)(4) of Ordinance Number 2013-11-109 violates section 212.904 of the Local Government Code, we conclude his complaint lacks merit. The trial court found that the City is a home-rule city. Selinger does not challenge that finding. Under article eleven, section five of the Texas Constitution, home-rule cities have broad discretionary powers, provided that no ordinance shall contain any provision inconsistent with the state constitution or with general laws enacted by the state legislature. TEX. CONST. art. XI, § 5; *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490 (Tex. 1993); *West End Pink, Ltd. v. City of Irving*, No. 05-99-00086-CV, 1999 WL 1140122, at *2 (Tex. App.—Dallas Dec. 14, 1999, no pet.). An ordinance of a home-rule city that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with the state statute. *Dallas Merchant's*, 852 S.W.2d at 491. As the party challenging the ordinance, Selinger had the "extraordinary burden" at trial to show the ordinance was invalid. *Comeau*, 633 S.W.2d at 792.

Section 212.904(a), titled "Apportionment of Municipal Infrastructure Costs," provides:

> If a municipality requires, including under an agreement under Chapter 242, as a condition of approval for a property development project that the developer bear a portion of the costs of municipal infrastructure improvements by the making of dedications, the payment of fees, or the payment of construction costs, the developer's portion of the costs may not exceed the amount required for infrastructure improvements that are roughly proportionate to the proposed development as approved by

–25–

a professional engineer who holds a license issued under Chapter 1001, Occupations Code, and is retained by the municipality. The municipality's determination shall be completed within thirty days following the submission of the developer's application for determination under this subsection.

LOC. GOV'T § 212.904(a). Section 130-27(a)(4), located in the chapter addressing land development regulations, provides that "[f]or a new development for which recordation of the final plat occurred on or after November 20, 2013, assessment impact fees shall occur at the time of final plat recordation and shall not exceed the maximum assessable impact fee per service unit (post credit) as set forth in schedule 1, table D, attached to Ord. No. 2013-11-109 and incorporated herein by reference, for each meter size and meter type for each proposed development unit as set forth in schedule 1, table D." Quint established the City calculated the proposed impact fees in accordance with Section 130-27(a)(4) and using table D and that the impact fees were roughly proportional to the impact of the proposed development and Selinger did not offer any evidence to the contrary. There is no conflict between section 130-27(a)(4) or schedule 1, table D and Section 212.904 of the Local Government Code because section 130-27(a)(4) and schedule 1, table D implement a rough proportionality apportionment.

Next, Selinger contends that any part of the subdivision regulations requiring a developer to release the City from any and all liability is null and void. Selinger has failed to identify any such regulation and, thus, has waived this argument. *See Alphonso Crutch Life Support Ctr. v. Williams*, No. 03-13-00789-CV, 2015 WL

7950713, at *3 (Tex. App.—Austin Nov. 30, 2015, pet. denied) (mem. op.). To the extent Selinger's complaint concerns the proposed Facilities Agreement's provision:

> DEVELOPER specifically reserves its right to appeal the apportionment of municipal infrastructure costs in accordance with TEX. LOC. GOV'T CODE ANN. § 212.904. However, notwithstanding the foregoing, DEVELOPER hereby releases the City from any and all liability under TEX. LOC. GOV'T CODE ANN. § 212.904 regarding or related to the cost of those municipal infrastructure improvements required for the development of the Property[,]

his complaint is moot because the exaction complied with section 212.904(a)'s rough proportionality requirement so the City's liability is not an issue and any opinion on the validity of this provision would be advisory. *See* TEX. CONST. art. V, § 6; *City of Garland v. Louton*, 691 S.W.2d 603, 605 (Tex. 1985) ("A court has no jurisdiction to render an opinion on a controversy that is not yet ripe."); *see also In re Duncan*, No. 05-16-0119-CV, 2016 WL 5723964, at *1 (Tex. App.—Dallas Oct. 3, 2016, no pet.) (mem. op.) (appellate court is not authorized to issue an advisory opinion). Moreover, this provision did not preclude Selinger from appealing the City's determination or from recovering applicable costs and reasonable attorney's fees, including expert witness fees, had he prevailed, and thus, did not conflict with section 212.904(d)[13] and (e).[14]

With respect to Selinger's declaratory judgment claim, we conclude the trial

---

[13] "A municipality may not require a developer to waive the right of appeal authorized by this section as a condition of approval for a development project." LOC. GOV'T § 212.904(d).

[14] "A developer who prevails in an appeal under this section is entitled to applicable costs and to reasonable attorney's fees, including expert witness fees." LOC. GOV'T § 212.904(e).

court did not err in concluding the City's subdivision ordinance is not unconstitutional and in violation of section 212.904 of the Local Government Code, and that Selinger is not entitled to a declaratory judgment. Accordingly, we overrule Selinger's fourth issue.

## CONCLUSION

We affirm the trial court's final judgment.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

230180F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

STEPHEN RICHARD SELINGER, Appellant

No. 05-23-00180-CV     V.

CITY OF MCKINNEY, TEXAS, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas Trial Court Cause No. 429-04150-2018.
Opinion delivered by Justice Kennedy. Justices Nowell and Miskel participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee CITY OF MCKINNEY, TEXAS recover its costs of this appeal from appellant STEPHEN RICHARD SELINGER.

Judgment entered this 24th day of January 2024.